UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,                    :
                                             :          **OPINION AND ORDER**
                    -against-                :
                                             :          14-CR-305 (DLI)
JOHN MAKROPOULOS,                            :
                                             :
                              Defendant.     :
-------------------------------------------------------- x
**DORA L. IRIZARRY, United States District Judge:**

On October 10, 2014, Defendant John Makropoulos ("Defendant") pled guilty before this

Court to the only count in the indictment of illegal reentry into the United States in violation of 8

U.S.C. §§ 1326(a) and 1326(b)(2). On December 30, 2014, Defendant moved, *pro se*, to (1)

relieve counsel; (2) appoint new counsel; (3) vacate his guilty plea pursuant to Federal Rule of

Criminal Procedure 11(d)(2)(B) and due to the alleged ineffective assistance of counsel; and (4)

dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2). (*See generally*

Motion to Appoint Counsel and Supplemental Memorandum of Law in Support of John

Makropoulos' *Pro Se* Motion to Vacate Guilty Plea and Dismiss Indictment ("*Pro Se* Mot."),

Dkt. Entry No. 22.) On February 5, 2015, the Court granted Defendant's request for the

appointment of new counsel. On April 28, 2015, Defendant filed the instant motion requesting

vacatur of his guilty plea and dismissal of the indictment. For the reasons set forth below,

Defendant's motion is denied in its entirety.

## BACKGROUND

Defendant was born in Athens, Greece on July 23, 1968 and immigrated to the United

States via New York City with his mother, Barbara Makropoulos, and other siblings on

September 28, 1968. (*See* Makropoulos Affidavit ¶ 4 ("Makropoulos Aff.").) Defendant's

criminal history preceding the deportation order at issue includes convictions for Attempted Petit

Larceny in violation of New York Penal Law § 110/155.25 (a class "B" misdemeanor), Attempted Burglary in the Second Degree in violation of New York Penal Law § 110/140.25 (a class "D" felony) and Grand Larceny in the Fourth Degree in violation of New York Penal Law § 155.30 (a class "E" felony) on August 5, 1985, January 19, 1988 and May 11, 1994, respectively. (*See* Memorandum of Law in Opposition to the Defendant's Motion to Vacate Guilty Plea and Dismiss the Indictment ("Gov't Opp. Mot.") at 2, Dkt. Entry No. 24.)

On January 27, 1995, the Immigration and Naturalization Service ("INS")[1] issued an order to show cause and a notice of hearing to Defendant alleging that he was a deportable alien, due to his prior convictions in 1985 and 1994, under §§ 241(a)(1)(B) and 241(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA") of 1965, then codified at 8 U.S.C. §§ 1251(a)(1)(B) and 1251(a)(2)(A)(ii) and now respectively codified at 8 U.S.C. §§ 1227(a)(1)(B) and 1227(a)(2)(A)(ii). (*See Id*. at 3.) A series of deportation hearings were conducted thereafter before the Honorable Alan L. Page, United States Immigration Judge ("the IJ"), at which Defendant sought to establish that he was a lawful permanent resident of the United States. (*Id*. at 4.) Defendant's legal representation at these proceedings alternated between Father Robert Vitaglione of Sacred Heart Church in Brooklyn, New York ("Fr. Vitaglione"), a non-attorney representative accredited pursuant to 8 C.F.R. § 292.2(a), and Anthony Hale, Esq. ("Hale"). (*Id*.)

At the deportation hearing held on December 7, 1995, after his mother[2] testified on his behalf, Defendant conceded that he was not a lawful permanent resident and admitted to the charges contained in the January 27, 1995 order to show cause. (*Id*.) The IJ adjourned the

---

[1] The Immigration and Naturalization Service came under the authority of the U.S. Department of Homeland Security in 2003, which created: (1) U.S. Citizenship and Immigration Services ("UCIS"); (2) U.S. Immigration and Customs Enforcement ("ICE"); and (3) U.S. Customs and Border Protection ("CBP") to handle immigration matters.

[2] Defendant's mother, Barbara Makropoulos, became a United States citizen in 1987 and, therefore, was eligible to file a Form I-130 on Defendant's behalf. (Makropoulos Aff. ¶ 19.)

matter to January 25, 1996 to allow Defendant to prepare an application for adjustment of status under INA §§ 212(h) and 245(i), codified at 8 U.S.C. §§ 1182(h) and 1225(i), respectively.[3] (*Id.* at 4-5.) Section 212(h) provides relief from deportation for certain aliens who, like Defendant, are a "spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence," where the alien can demonstrate that "the alien's denial of admission would result in extreme hardship to the U.S. citizen or lawfully resident spouse, parent, son or daughter of such alien . . ." 8 U.S.C. § 1182(h)(1)(B). Additionally, the IJ advised Defendant that he would be required to file a Form I-130, Petition for Alien Relative, to be prepared by Defendant's mother and a Form I-485, Application for Permanent Residence, as part of this application. (*Id.* at 5.)

At each of the three subsequent deportation hearings held on January 25, 1996, February 23, 1996 and May 6, 1996, Defendant's counsel, Hale, informed the IJ that, although the above-referenced forms had been filed, the associated fees had not yet been paid. (*Id.* at 6.) On July 22, 1996, the IJ acknowledged receipt of proof of payment of the fees and admitted several submissions from Defendant into evidence regarding his application for adjustment of status. (*Id.*)

At the deportation hearing held on November 6, 1996, Defendant appeared without counsel, but was immediately informed by the IJ that Hale was running late. (*Id.* at 7; Exhibit R at 2.) Rather than wait for counsel as suggested by the IJ, Defendant elected to proceed *pro se* because he had other appointments to keep and could not wait for counsel. (*Id.*) During the course of this proceeding, Defendant withdrew his application for §§ 212(h) and 245(i) relief and

---

[3] Adjustment of status under the Immigration and Nationality Act is "'a technical term describing a process whereby certain aliens physically present in the United States may obtain permanent resident status . . . without leaving the United States.'" *Adams v. Holder*, 692 F.3d 91, 101 (2d Cir. 2012) (quoting *Succar v. Ashcroft*, 394 F.3d 8, 13 (1st Cir. 2005)).

informed the IJ that he had purchased an airline ticket to return to Greece that night to be reunited with his family. (*Id*. at 7; Exhibit R at 3.) Defendant further informed the court that he was withdrawing his application for adjustment of status and voluntarily accepted the deportation order to Greece (the "1996 Deportation Order") as the final decision in his case, thereby waiving his right to appeal. (*Id*. at 7; Exhibit R at 4.) According to the deportation warrant attached to the government's motion papers, Defendant was deported from the United States via Olympic Airlines No. 414 at 7:25 p.m. at John F. Kennedy International Airport that same day. (*Id*. at Exhibit T.)

On June 14, 2007, Defendant pled guilty in New York State Supreme Court, Queens County to Grand Larceny in the Fourth Degree in violation of New York Penal Law § 155.30 (a class "E" felony) and Burglary in the Second Degree in violation of New York Penal Law § 140.25 (a class "C" felony), and was sentenced to concurrent prison terms of two to four years and three and a half years, respectively. (*See Id*. at Exhibit Y.) The U.S. Department of Homeland Security then issued two Notices of Intent/Decision to Reinstate Prior Order (Forms I-871) on May 2, 2008 and October 6, 2008 as to the deportation order originally issued on November 6, 1996. (*Id*. at 8.)

On February 4, 2009, Defendant was charged in the United States District Court for the Northern District of New York ("NDNY") with illegal reentry after removal, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). (*Id*. at 9.) After pleading guilty to this charge, Defendant was sentenced to time served and two years of supervised release on January 7, 2010. (*Id*.) On March 17, 2010, Defendant was deported to Greece. (*Id*. at Exhibit W.)

On January 14, 2014, Defendant illegally reentered the United States via a shipping port in New Jersey without the permission of the U.S. Attorney General or the Secretary of the

Department of Homeland Security. (*Id*. at Exhibit X.) On March 25, 2014, Defendant was convicted in Queens County Criminal Court of Criminal Possession of a Controlled Substance in the Seventh Degree in violation of New York Penal Law § 220.03 (a class "A" misdemeanor) and was sentenced to ninety days' imprisonment. (*Id*. at Exhibit Y.) On May 22, 2014, Defendant was indicted in this district for illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2).

On October 10, 2014, pursuant to a written plea agreement, Defendant pled guilty, under oath, to illegal reentry. (*See generally*, Transcript of Pleading ("Plea Tr."), Dkt. Entry No. 16.) During the course of the extensive plea allocution, the Court inquired, *inter alia*, into Defendant's level of education, his physical and mental health, and his level of satisfaction with his defense counsel, Mildred M. Whalen ("Whalen") of the Federal Defenders of New York, Inc. (*Id*. at 5:25-10:8.) Defendant informed the Court that he completed the eleventh grade, was in good physical and mental health, and was fully satisfied with Whalen's legal representation. (*Id*.) Defendant admitted that he was not a United States citizen. The Court thoroughly explained to Defendant the rights he would be waiving by pleading guilty, including, *inter alia*, his right to a jury trial, his right against self-incrimination, to have counsel cross-examine witnesses, and to present evidence on his behalf and subpoena and compel witnesses to testify. (*Id*. at 12:15-15:3.) Defendant also stated that he understood the terms of his written plea agreement, which he had read and reviewed with his attorney. (*Id*. at 15:4-16:11.) The Court also explained in detail the penalties he faced by pleading guilty, including his certain removal from the United States, all of which also were contained in the written plea agreement. Defendant expressed his understanding and acquiescence. (*Id*. at 11:3-15:3.) The Court asked Defendant whether, knowing that he would be deported, he still wanted to plead guilty. (*Id*. at

21:21-24.)  Defendant, again, informed the Court that he understood the immigration consequences of his guilty plea and, nonetheless, elected to plead guilty.  (*Id*. at 21:24.)  At the end of the allocution, the Court accepted Defendant's guilty plea, finding that he was pleading guilty knowingly, voluntarily, with a full understanding of the consequences of his plea, and that there was a factual basis for his plea.

Defendant now seeks vacatur of his guilty plea and dismissal of the underlying indictment based upon alleged due process violations that occurred during the deportation hearing and alleged ineffective assistance of counsel rendered during the plea negotiations in this case.  The government opposes the motion on the grounds that Defendant received effective assistance from his counsel and Defendant's motion to dismiss the indictment is meritless under the three-prong test codified in 8 U.S.C. § 1326(d).

## DISCUSSION

### I.      Ineffective Assistance of Counsel Claim

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defense."  U.S. Const. Amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome."  *Id*.

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *U.S. v. Birkin*, 366 F. 3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

The crux of Defendant's ineffective assistance of counsel claim is that counsel's suggestion that Defendant was not likely to prevail on a motion to dismiss the indictment constitutes a failure to provide objectively reasonable advice under the circumstances of this case and prevailing professional norms. (Def. Supp. Mem. II at 6, Dkt. Entry No. 30.) Moreover, Defendant contends that, but for defense counsel's purportedly erroneous advice, he would have filed the motion challenging the indictment, instead of pleading guilty as he did. (*Id*. at 7-8.) The government counters that Defendant fails to satisfy the first prong of the *Strickland* test as counsel's affidavit reflects diligent legal work satisfying prevailing professional norms. (*See generally* Gov't Supp. Mot., Dkt. Entry No. 29.) The government further contends that Defendant failed to satisfy the prejudice prong of *Strickland* because there was no showing that, but for the alleged professional errors committed by defense counsel, Defendant "would have been acquitted at trial" or "received a lesser sentence." (*Id*. at 10.) Indeed, as discussed below, Defendant's challenge to the 1996 Deportation Order and indictment is entirely meritless, supporting the Court's conclusion and the government's position that defense counsel's advice

was proper and consistent with prevailing case law. As such, Defendant cannot satisfy the second prong of the *Strickland* test.

In determining whether Defendant's prior counsel's performance fell below the prevailing professional standard of objective reasonableness, the Court must consider the strategic choices that counsel made throughout the course of the defense. Defense counsel's decision not to file a motion to dismiss the indictment against Defendant was based upon her assiduous review of the discovery provided by the government, Defendant's immigration "A" file, and court and defense files in Defendant's prior illegal-reentry prosecution in the NDNY. (Whalen Aff. at ¶ 2.) Additionally, counsel researched the viability of a derivative citizenship claim, and she reasonably (and correctly) determined that such a defense was not viable. (*Id*. at ¶ 4.) Defense counsel further concluded that, Defendant's voluntary withdrawal of his § 212(h) application, which he made at the IJ's suggestion, nullified any future motion to dismiss the indictment here on the basis of denial of such relief.[4] (*Id*. at ¶¶ 5-7.) Defense counsel discussed her findings with Defendant and explained to him that she did not believe that he would prevail on a motion to dismiss the indictment. (*Id*. at ¶¶ 6-7.) These decisions were based upon diligent research and are considered tactically sound in light of the information available to counsel at the time, and the state of the law as discussed *infra*.

The Court concurs with the government's assessment of counsel's performance. There is nothing in this record to support Defendant's post-plea claims. The Court conducted a thorough guilty plea allocution. Defendant responded to the Court's questions while under oath. The Court specifically inquired as to whether Defendant was aware of the immigration consequences

---

[4] Defense counsel stated in her affidavit that, when she inquired into Defendant's reasons for withdrawing his request for § 212 relief, Defendant informed her that the IJ rendered the following advice: "since [Defendant] was married to a United States citizen, he could agree to voluntary departure and that she could later file for him to return to the United States via a spousal petition for legal permanent residence status." (Whalen Aff. ¶ 6.)

of his guilty plea. (Plea Tr. at 21:21-24.) Defendant responded affirmatively and chose to plead guilty nonetheless. (*Id.* at 21:24.)

Given the strong presumption of veracity accorded statements at a plea allocution, a defendant's bald assertions to the contrary constitute insufficient grounds to withdraw a guilty plea. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997); *see also United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001); *United v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011). Here, Defendant's affirmative responses to this Court's inquiries into his satisfaction with the representation and advice provided by defense counsel and the voluntary nature of his guilty plea negate any claim of ineffective assistance of counsel. (Plea Tr. at 10:1-8; 24:9-11.) Mere contentions that counsel failed to review the discovery materials and arguments concerning the unconstitutionality of the 1996 Deportation Order prove deficient with respect to an ineffective assistance claim, particularly where, as here, such contentions are belied by the record. Defendant was well aware of the charge that he was pleading guilty to (illegal reentry) and that deportation was a certainty. Nonetheless, he chose to plead guilty. Thus, Defendant has failed to provide any "credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord." *Wyatt v. United States*, 2015 WL 1514385, at *6 (E.D.N.Y. March 31, 2015).

Under the peculiar circumstances of this case, the performance prong of and the prejudice prong of the *Strickland* standard are somewhat intertwined. Much of Defendant's complaints about defense counsel's performance are based on Defendant's belief that he had a meritorious motion to dismiss the instant indictment based on a challenge to the validity of the 1996 Deportation Order. However, as discussed below, Defendant was mistaken and the indictment is valid. As such, his requests to vacate his guilty plea and dismiss the indictment are denied both

because he was not denied effective assistance of counsel and because the 1996 Deportation Order, and, consequently, the instant indictment, are valid.

## II.     Motion to Withdraw Guilty Plea

Defendant contends that his motions to vacate his guilty plea should be granted for the following reasons:    (1) Defendant pled guilty to the indictment based on an incorrect understanding that he could not challenge the 1996 Deportation Order as a part of this case; (2) constitutional due process violations tainted the validity of the 1996 Deportation Order; and (3) had Defendant received a fair removal hearing, he likely would have been granted discretionary relief from deportation.    (*Pro Se* Mot. at 3-4.)    The government counters that, because Defendant's motion to dismiss the indictment pursuant to the alleged invalidity of the removal proceeding lacks merit, the basis for withdrawing the guilty plea becomes null and void.    (Gov't Opp. Mot. at 12-13.)    The government further argues that Defendant did not exhaust available administrative remedies in compliance with 8 U.S.C. § 1326(d)(1) because he waived his right to appeal and failed to file a motion to reopen his deportation proceedings.    (*Id*. at 14.)

Federal Rule of Criminal Procedure 11(d)(2)(b) provides that "[a] defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal."    Fed. R. Crim. P. 11(d)(2)(b).    "A defendant who seeks to withdraw his or her plea bears the burden of showing that there are valid grounds for withdrawal."    *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004); *see also United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002).    In determining whether a defendant has demonstrated a "fair and just reason" to warrant withdrawal, "a district court considers, *inter alia*:    (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea

and the motion (the longer the elapsed time, the less likely withdrawal will be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *Schmidt*, 373 F.3d at 102-03, *see also Couto*, 311 F.3d at 185. Under prevailing Second Circuit jurisprudence, courts also may consider "whether the defendant has 'raise[d] a significant question about the voluntariness of the guilty plea.'" *Schmidt*, 373 F.3d at 103 (quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

### A. Assertion of Legal Innocence

A thorough review of the record reveals that Defendant's assertion of legal innocence based upon an alleged deprivation of due process is utterly without merit. The IJ advised Defendant that his attorney was running late for the November 6, 1996 hearing and asked Defendant if he wanted to wait for him. (Gov't Opp. Mot., Exhibit R.) Defendant voluntarily chose to waive his right to counsel and proceed. (*Id*.) Notwithstanding Defendant's belated, self-serving and unsupported assertions of advice by the IJ to him as to what would likely happen to his application, the record is clear that Defendant stated, unequivocally, that he wanted to proceed *pro se* due to other previously scheduled appointments he had to honor that prevented him from waiting for Hale. (*Id*.) Moreover, he voluntarily agreed to the entry of a deportation order that was to be executed immediately. Indeed, Defendant stated that he himself had purchased a plane ticket to Greece, leaving that day, and agreed to waive his right to appeal. Defendant now claims that when the deportation order was executed and the agents took Defendant to board the flight for Greece, he got off the plane and remained in the United States. At this point, Defendant's remaining in the United States was illegal. He chose to waive his right to counsel and to appeal the deportation order at the hearing, fully cognizant of the consequences, and then proceeded to violate the law.

Notably, Defendant's assertion does not constitute a claim of innocence as much as it constitutes a belated challenge to the validity of the 1996 Deportation Order. Defendant does not deny that he illegally reentered the United States; rather, he argues that the 1996 Deportation Order deprived him of his due process rights because the IJ failed to advise him of discretionary relief that was available to him. Most significantly, Defendant did not challenge his 1996 Deportation Order in 2009 when convicted upon his guilty plea to illegal reentry in the NDNY and was removed to Greece. He illegally reentered the United States four years later. Because he committed a local crime in 2014, he came to the attention of ICE and this prosecution ensued. Arguably, Defendant waived any possible challenge to the 1996 Deportation Order by not having challenged it in 2009 in connection with his illegal reentry conviction in the NDNY. Under the totality of the circumstances, Defendant has failed to show a "fair and just" reason for withdrawal of his guilty plea.

### B. Time Lapse Between the Plea and Filing of Motion

A total of seventy-three days lapsed between Defendant's guilty plea to illegal reentry on October 10, 2014 and his filing of the instant motions on December 22, 2014. (Def. Supp. Mem. at 7.) Although Defendant contends that the reason for the delay was his misunderstanding of the law as to when he could challenge the 1996 Deportation Order, such a misunderstanding is insufficient to satisfy this factor. *See United States v. Rosen*, 2004 WL 1234037 (S.D.N.Y. June 2, 2004). In *Rosen*, the defendant waited approximately four months to attempt to withdraw his guilty plea. *Id*. at *3. Following the reasoning underlying the Fifth Circuit's decision in *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984), *Rosen* held that "[s]uch a strategic maneuver is plainly contrary to the rationale for plea withdrawal as contemplated by most circuit courts." *Id*. Indeed, the *Carr* court found that:

The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

740 F.2d at 345.

Here, Defendant intelligently, knowingly and voluntarily pled guilty to illegal reentry. Defendant now alleges that he pled guilty because he believed doing so would afford him the opportunity to litigate his immigration case more quickly, and he could do so only after the illegal reentry prosecution had been concluded. (Makropoulos Aff. ¶ 24; Def. Supp. Mem. at 7.) Defendant's decision to plead guilty and then move to withdraw his plea based on a "better understanding" of the applicable law amounts to a strategic maneuver that does not justify vacating his plea that was knowingly and voluntarily entered.

Having found that the legal innocence claim is meritless, and an inordinate amount of time elapsed between the guilty plea and the making of the motion, the Court need not address the question of whether withdrawal of the plea would cause the government prejudice. *Id.*

Because Defendant was not deprived of effective assistance of counsel and he has not demonstrated a fair or just reason to warrant withdrawal of the plea, that portion of Defendant's motion is denied.

## III.    Motion to Dismiss Indictment

### A.  Standard for Dismissal of an Indictment

"A motion to dismiss an indictment must satisfy a high standard." *U.S. v. Brooks*, 2009 WL 3644122, at *2 (E.D.N.Y. Oct. 27, 2009) (citations and internal quotations omitted). This is because "[a]n indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De Le Pava*, 268 F.3d 157, 162 (2d Cir. 2001)

(citation omitted). A court must "accept [] the facts alleged in the indictment as true and determine [] only whether the indictment is 'valid on its face.'" *Id.* (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

The Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [they] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (citations and internal quotations omitted). "Essentially, the indictment must . . . be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Brooks*, 2009 WL 3644122, at *2 (citing FED. R. CRIM. P. 7(c)(1)).

### B.  Standard for Challenging the Validity of a Deportation Order

The Immigration and Nationality Act, 8 U.S.C. § 1326(a), criminalizes the entry, attempted entry or presence of a deported or removed alien in the United States.  However, the statute affords an alien the ability to defend against a charge of illegally reentering the United States following deportation by challenging the validity of the underlying deportation order on which the charge is predicated.  8 U.S.C.A. § 1326(a); *see United States v. Scott*, 394 F.3d 111, 116 (2d Cir. 2005); *see also United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004); *see also United States v. Gonzalez-Roque*, 301 F.3d 39, 45 (2d Cir. 2002).  The Supreme Court first clarified this principle in *United States v. Mendoza-Lopez*, finding that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a

criminal sanction, there must be some meaningful review of the administrative proceeding." 481 U.S. 828, 837-38 (1987).

By an amendment passed in 1996, "Congress effectively codified the holding of *Mendoza-Lopez* in 8 U.S.C. § 1326(d)." *Scott*, 394 F.3d at 116. The statute provides that, in order for a defendant to collaterally attack a deportation order successfully, and thereby the underlying offense of illegal reentry, s/he must demonstrate that: (1) any available administrative remedies have been exhausted; (2) s/he was improperly deprived of the opportunity for judicial review at the deportation proceeding at which the order was issued; and (3) the entry of the order was fundamentally unfair. 8 U.S.C.A. § 1326(d) (West 2015).

The Second Circuit has held further that "a defendant may collaterally attack an order of deportation on due process grounds where . . . the order becomes an element of a criminal offense." *Gonzalez-Roque*, 301 F.3d at 45. The Second Circuit explained the hurdles a defendant must overcome if s/he is to succeed in collaterally attacking the validity of a deportation order under 8 U.S.C. § 1326(d). With respect to the exhaustion of administrative remedies requirement of § 1326(d)(1), the Second Circuit has held that:

> A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) . . . only where an alien's waiver of administrative review was knowing and intelligent. Where this condition is met, an alien can be constitutionally prohibited from collaterally attacking his deportation proceeding even if denied the opportunity for judicial review, because exhaustion is a valid precondition for judicial review and a knowing and voluntary failure to exhaust would validly waive the right to judicial review.

*United States v. Sosa*, 387 F.3d 131, 136-37 (2d Cir. 2004).

Concerning the deprivation of opportunity for judicial review prong of § 1326(d)(2), the Second Circuit has held that, "'where defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made

available before the administrative order may be used to establish conclusively an element of the criminal offense.'" *United States v. Lopez*, 445 F.3d 90, 95 (2d Cir. 2006) (quoting *Mendoza-Lopez*, 481 U.S. at 838). However, "nothing in *Mendoza-Lopez* indicates that this principle requires a right to notice about the availability of judicial review." *Id*. In reading *Mendoza-Lopez* and *Gonzalez-Roque* in tandem, the Second Circuit has concluded that, "where habeas review is technically available, judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." *United States v. Copeland*, 376 F.3d 61, 68 (2d Cir. 2004).

In order for an alien to substantiate a deportation order's fundamental unfairness under § 1326(d)(3), he must show "'both a fundamental procedural error and prejudice resulting from that error.'" *United States v. Williams*, 733 F.3d 448, 455 (2d Cir. 2013) (quoting *United States v. Cerna*, 603 F.3d 32, 40-41 (2d Cir. 2010)). In order to show prejudice, the defendant must establish that, "absent the procedural errors, he would not have been removed." *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002). Although the Second Circuit declined "to state the quantum of proof necessary for an alien to succeed in his demonstration of prejudice on collateral review," the Court suggested that a showing that there was a reasonable likelihood that an alien would not have been deported or a plausible showing of such might be sufficient. *Id*. at 159-60.

### 1. Relevant Amendments to the Immigration and Nationality Act

In September 1996, Congress passed two amendments to the INA that fundamentally altered the availability of discretionary relief to certain classes of aliens for whom deportation orders had been issued: (1) the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") and (2) the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The IIRIRA

repealed § 212(c) of the INA, 8 U.S.C. § 1182(c), in its entirety "thereby eliminating discretionary relief from deportation that was previously available to noncitizens convicted of aggravated felonies." *United States v. Gill*, 748 F.3d 491, 498 (2d Cir. 2014).

Former § 212(c) provided that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [provisions setting forth various grounds for exclusion] . . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years.
> 8 U.S.C. § 1182(c) (1994) (repealed by IIRIRA § 304(b), 110 Stat. at 3009-597, Sept. 30, 1996).

The Supreme Court has proscribed retroactive application of the 1996 amendments' repeal of § 212(c) for aliens who pled guilty to aggravated felonies prior to 1996. *I.N.S. v. St. Cyr*, 533 U.S. 289, 326 (2001). Therefore, discretionary relief pursuant to former § 212(c) remains available to those eligible aliens convicted of crimes prior to the 1996 Amendments' passage. *See Lopez*, 445 F.3d at 93.

### 2. Section 1326(d)(1): Exhaustion of Administrative Remedies

Under prevailing Second Circuit case law, district courts must make a determination based upon the factual findings as to whether a waiver of rights during a deportation hearing is knowing and voluntary. *United States v. Calderon*, 391 F.3d 370, 375 (2d Cir. 2004). Under circumstances in which an undocumented alien's waiver of administrative review of a deportation order was not knowing and intelligent, the Court may excuse such alien from satisfying the exhaustion requirement of 8 U.S.C. § 1326(d)(1). *Id*. at 371. The Court's review of the record here supports a finding that Defendant's withdrawal of his application for relief was voluntary, knowing and intelligent with respect to the 1996 Deportation Order.

The transcript of the November 6, 1996 deportation hearing shows that Defendant expressly waived both his right to counsel and his right to appeal the final order of deportation. (Gov't Opp. Mot., Exhibit R.)  After Defendant withdrew his application for discretionary relief, the IJ informed him of the consequences of his decision and asked Defendant to reaffirm his desire to withdraw his petition for admission.  (*Id*. at 4.)  The IJ also noted for the record the execution of a short form memorandum of the deportation order that memorialized the Defendant's voluntary withdrawal of the application for adjustment of status pursuant to § 212(h).  (*Id*. at 5.)

Accordingly, as Defendant knowingly, intelligently and voluntarily waived his right to administrative review, Defendant failed to exhaust available administrative remedies.  Therefore, the first prong of the § 1326(d) analysis is not satisfied.

### 3.  Section 1326(d)(2):  Improper Denial of Judicial Review

Defendant contends that he was denied the opportunity for judicial review of the 1996 Deportation Order because direct review was unavailable, and he never had a realistic opportunity to seek habeas review of the order due to the immediate departure date set for his deportation.  (*See generally* Def. Supp. Mem.)  The *Copeland* Court held that "where habeas review is potentially available, an opportunity for judicial review will still be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic opportunity of filing a habeas petition."  376 F.3d at 68.  *Copeland* further interpreted the governing precedents of *Mendoza-Lopez* and *Gonzalez-Roque* "to establish a principle that where no realistic opportunity for judicial review by way of habeas review existed, an alien's failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under Section 1326(d)(2)."  *Id*.

Here, the temporal interval between the 1996 Deportation Order and Defendant's physical deportation to Greece was virtually non-existent as Defendant ostensibly departed John F. Kennedy International Airport the same evening the order was issued. The 1996 Deportation Order became final on the date of issuance, November 6, 1996. Under, 8 C.F.R. § 1003.39, "the decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken, whichever occurs first." 8 C.F.R. § 1003.39. Defendant validly waived his right to appeal at the hearing on November 6, 1996.

After deportation, additional administrative and habeas review were precluded by a pre-IIRIRA provision that applied to Defendant under the transitional rules of that statute. That provision, former Section 106 of the Immigration and Nationality Act, stated that "[a]n order of deportation . . . shall not be reviewed by any court if the alien . . . has departed the United States after the issuance of the order." 8 U.S.C. § 1105a(c) (1995). "Section 106 applied to aliens subject to IIRIRA's transitional rules governing judicial review—aliens who were in deportation proceedings 'as of' April 1, 1997, and in whose cases final orders of deportation were entered after October 30, 1996." *Copeland*, 376 F.3d at 69 (citing IIRIRA § 309(c)). Defendant meets these criteria because his final deportation order was entered on November 6, 1996. Thus, Defendant was statutorily barred from filing a habeas petition subsequent to his deportation and seemingly satisfies the second prong of the Section 1326(d) analysis. However, "deprivation of judicial review is only one element of the collateral attack." *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002) (holding that, notwithstanding deprivation of judicial review, the deportation hearing was fundamentally fair and did not violate the defendant's due process rights). As discussed above and further below, the November 6, 1996 deportation proceeding was fundamentally fair and did not violate Defendant's due process rights.

## 4. Section 1326(d)(3): Fundamental Fairness

The final prong of the Section 1326(d) analysis requires the Court to assess whether the administrative proceedings underlying the 1996 Deportation Order prejudiced Defendant, warranting relief on direct appeal. *Gill*, 748 F.3d at 506. Section 1326(d)(3) requires a bifurcated analysis showing "both a fundamental procedural error and prejudice resulting from that error" before this element is deemed satisfied. *Cerna*, 603 F.3d at 40 (internal quotation marks omitted); *see United States v. Perez*, 330 F.3d 97, 104 (2d Cir. 2003). As explained below, Defendant cannot satisfy either element of the fundamental fairness analysis.

### a. Fundamental Procedural Error

With respect to the first prong of the fundamental fairness analysis, Defendant has failed to show the commission of a fundamental procedural error on the part of either counsel or the IJ during the November 6, 1996 proceeding. Because a deportation hearing is a civil, and not a criminal, proceeding, to prevail on an ineffective assistance of counsel claim, Defendant must satisfy a stricter standard. "[A]n alien must show that his counsel's performance was 'so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" *Saleh v. United States Dep't of Justice*, 962 F.2d 234, 241 (2d Cir. 1992) (quoting *Ramirez-Durazo v. I.N.S.*, 794 F.2d 491, 500 (9th Cir. 1986)) (internal quotation marks omitted). In order to establish a showing of a deprivation of fundamental fairness, Defendant must allege facts sufficient to show "'1) that competent counsel would have acted otherwise, and 2) that he was prejudiced by his counsel's performance.'" *Cerna*, 603 F.3d at 43 (quoting *Rabiu v. I.N.S.*, 41 F.3d 879, 882 (2d Cir. 1994)). Hale's delay in arriving at the hearing did not constitute such a deprivation of fundamental fairness. Hale diligently informed the IJ of his unforeseen delay, and the IJ communicated that information to

Defendant and gave Defendant the option to wait for his attorney before proceeding. Defendant voluntarily chose to proceed *pro se*. He cannot now be heard to complain that his counsel was ineffective or that he was unfairly deprived of counsel.

Furthermore, Hale already had petitioned for discretionary relief on Defendant's behalf pursuant to a § 212(h) application. Decision on the application was pending until Defendant unilaterally decided to withdraw it from consideration and agreed to his immediate deportation. Defendant cannot now be permitted to complain that he was prejudiced by a decision he freely, knowingly, and intelligently made. Defendant did not suffer any prejudice on the basis of Hale's legal representation. Thus, counsel's performance in relation to the 1996 Deportation Order comported with the prevailing professional norms of immigration law practice.

### b. Prejudice

In order to satisfy the prejudice prong, Defendant must demonstrate "a reasonable probability that, but for the IJ's unprofessional errors," Defendant would not have been ordered removed. *Copeland*, 376 F.3d at 73; (Whalen Aff. ¶ 6.) Defendant has not done so.

As an initial matter, Defendant was ineligible for § 212(c) relief because he was not a lawful permanent resident alien. *See* 8 U.S.C. § 1182(c). Second, the IJ discussed this form of relief with Defendant during the course of the two deportation hearings prior to November 6, 1996 and granted him extensions of time to pursue it. (*See* Ex. L at Recording No. 3, 19:06-42:36; Recording No. 4, 00:001-32:35; Recording No. 5, 14:56-43:18; Recording No. 6, 00:01-19:29; Dkt. Entry No. 24.) Third, Defendant voluntarily withdrew his application for § 212 relief, and offered to leave the United States voluntarily stating that he had purchased a plane ticket to Greece leaving that same day.

Defendant's decision to waive his right to counsel and proceed *pro se* was a voluntary, knowing and intelligent choice that cannot be attacked by allegations of procedural error or judicial prejudice. While 8 U.S.C. § 1229(a)(b)(4)(A) permits an alien to be represented by counsel in a removal proceeding, the "provision does not constitute a basis for excusing [Defendant's]" withdrawal of the § 212(h) application. *United States v. Bedros*, 2007 WL 2455135, *3 (E.D.N.Y. Aug. 23, 2007). Indeed, the absence of counsel at the issuance of the 1996 Deportation Order does not protect Defendant against the adverse immigration consequences of his voluntary decisions provided that he was apprised of such consequences beforehand. The record here amply shows that he was so apprised.

Finally, the IJ informed Defendant during numerous hearings that he had the right to appeal a deportation order. (*See* Ex. L at Recording No. 1, 23:00-23:32, 41:47-41:54.) Specifically, the IJ inquired as to whether Defendant wished to accept the deportation order as a final decision in his case at the November 6, 1996 hearing. (*Id.* at Recording No. 6, 23:01-23:11; Ex. R at 4:42-5:03.) These inquiries effectively negate any assertion that Defendant was not made aware of his right to appeal.

As Defendant cannot satisfy all three prongs of the § 1326(d) analysis, his collateral challenge to the validity of the 1996 Deportation Order fails. Accordingly, his motion to dismiss the indictment is denied.

**CONCLUSION**

For the reasons set forth above, Defendant's motions to vacate his guilty plea and to dismiss the indictment are denied in their entirety.

SO ORDERED.

Dated: Brooklyn, New York
      March 1, 2016

                          _____/s/_____
                                 DORA L. IRIZARRY
                           United States District Judge